JAMES W. LEWIS (SBN 207599)
jlewis@sssfirm.com
J. KYLE GAINES (SBN 287536)
kgaines@sssfirm.com
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Suite 255
Beverly Hills, CA 0211
Telephone: (310) 341-2086
Facsimile: (310) 773-5573

Attorneys for Plaintiff,
L.R.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.R., an individual, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES** |
| UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); DARRELL WAYNE SMITH, an individual; and DOES 1 through 10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## INTRODUCTION

1.     On April 13, 2023, Correctional Officer DARRELL WAYNE SMITH aka "Dirty Dick Smith" ("CO SMITH") was criminally indicted ("INDICTMENT") for sexually assaulting three female inmates at Federal Correctional Institution Dublin ("FCI DUBLIN"), located at 5701 8th St., Dublin, County of Alameda, State of California.  FCI DUBLIN is an all-female low security federal correctional institution with an adjacent minimum-security satellite camp located

in Dublin, California.  The sexual assaults occurred on numerous occasions between approximately May of 2019 and at least May of 2021 at FCI DUBLIN while SMITH was employed at FCI DUBLIN as a correctional officer.  FCI DUBLIN is located within the Northern District of California.  CO SMITH is charged with multiple counts of violation of 18 U.S.C. section 2244(a)(4) for knowingly engaging in sexual contact with persons in official detention under his custodial, supervisory and disciplinary authority while acting within the course and scope of his employment at FCI DUBLIN.

2.    The INDICTMENT charges that CO SMITH's sexual assaults of the three female inmates include such vile acts as touching their inner thighs, groin, buttocks, breasts, digital penetration of the anus, vaginal digital penetration, and engaging in sexual intercourse in violation of 18 U.S.C. section 2243(b).

3.    CO SMITH would terrorize inmates by locking them into their cells and refusing to let them leave until they exposed themselves to him. He would also threaten them with disciplinary retaliation if they did not comply, presuming that no one would listen to or believe a victim that was also incarcerated for a crime.

4.    During the same time periods and beyond, Plaintiff L.R. ("Plaintiff") was also a female inmate at FCI DUBLIN.  She was also sexually assaulted by CO SMITH on numerous occasions while he was acting within the course and scope of his employment at FCI DUBLIN as a correctional officer.

5.    CO SMITH visited Plaintiff in her cell.  CO SMITH touched and fondled L.R.'s breasts and vagina.

6.    CO SMITH threatened to send Plaintiff to solitary confinement if she complained about the abuse.

7.    Based on information and belief, before and during CO SMITH's sexual assaults of Plaintiff, it was well known among the female inmates, wardens, associate wardens, correctional officers and other staff that CO SMITH had a reputation for sexually abusing inmates.  Yet nothing was done to stop him.

/ / /

1

2

3

**"A FISH ROTS FROM THE HEAD DOWN"**

**CULTURAL SEXUAL ABUSE AT FCI DUBLIN**

**Warden/Associate Warden Ray J. Garcia**

4      8.      On November 2, 2021 FCI DUBLIN Warden and Associate Warden, RAY J.

5  GARCIA ("WARDEN GARCIA"), was criminally indicted for sexually assaulting a female

6  inmate at FCI DUBLIN on numerous occasions starting in 2019.  WARDEN GARCIA groomed

7  the female inmate by giving her candy, sharing personal information about himself, and

8  suggesting he could transfer her to a facility closer to her family.  WARDEN GARCIA also told

9  the female inmate that he wanted to perform oral sex on her.

10      9.      WARDEN GARCIA was charged with two criminal counts of digital vaginal

11  penetration of a female inmate.

12      10.      From approximately November of 2020 to July of 2021 WARDEN GARCIA was

13  the warden at FCI DUBLIN.

14      11.      From approximately December 2018 to November 2020, WARDEN GARCIA

15  was the associate warden at FCI DUBLIN.

16      12.      As the warden, WARDEN GARCIA was responsible for the safekeeping, care,

17  protection, discipline, programming, and release of inmates incarcerated at FCI DUBLIN.

18  WARDEN GARCIA was also responsible for hiring, training, and supervising and managing

19  staff, and determining operating procedures and policies. In his role as associate warden and

20  warden, WARDEN GARCIA had disciplinary authority over all inmates incarcerated at FCI

21  DUBLIN.

22      13.      Thus, WARDEN GARCIA had almost limitless power at DUBLIN.  WARDEN

23  GARCIA was in charge of the entire FCI DUBLIN facility.  WARDEN GARCIA was required

24  to conduct his work and supervise inmates in accordance with BOP policies and procedures. He

25  was advised, as part of his training, that he could not maintain inappropriate relationships with

26  inmates, which included becoming emotionally, physically, sexually, or financially involved

27  with inmates or former inmates. WARDEN GARCIA was further advised that he could not show

28  favoritism or give preferential treatment to one inmate or group of inmates over another.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

14.    In 2019 and 2020, WARDEN GARCIA led training for staff at FCI DUBLIN, including corrections officers, on the Prison Rape Elimination Act ("PREA").  However, instead of directing corrections officers and other staff to comply with the mandates of PREA, WARDEN GARCIA demonstrated by his own behaviors that it was acceptable at FCI DUBLIN to sexually assault female inmates as a matter of course.  WARDEN GARCIA institutionally led by example in a course of conduct that demonstrated that sexual assaults of female inmates were acceptable and would not be punished.

15.    An investigation revealed that WARDEN GARCIA knowingly engaged in a sexual act with at least one inmate at FCI DUBLIN that was under his custodial, supervisory, or disciplinary authority.  The same investigation revealed that WARDEN GARCIA asked at least two inmates to strip naked for him when he did his rounds in the prison, and that he took pictures of at least one of those inmates while she was naked in a cell at FCI DUBLIN.

16.    On one particular occasion WARDEN GARCIA directed an inmate to disrobe in her cell and get on her hands and knees.  WARDEN GARCIA then proceeded to photograph the woman.

17.    On another occasion, WARDEN GARCIA used a changing stall designed for PREA compliant searches to sexually assault the female inmate.

18.    WARDEN GARCIA also directed at least two inmates to be fully nude in their cells for his personal sexual gratification while he made his rounds around FCI DUBLIN.

19.    Additionally, a large volume of sexually graphic photographs, including images of male and female genitalia and nude photographs of WARDEN GARCIA were discovered on WARDEN GARCIA's work cellphone issued by the Board of Prisons.

20.    WARDEN GARCIA also told a female inmate that he liked convicts because they do not go to the cops, that he could not be fired and that she could not "ruin him" for purposes of preventing the individual from disclosing WARDEN GARCIA's sexual abuse and assaults.

21.    WARDEN GARCIA was convicted of sexual assaulting a female inmate in March of 2023.  During WARDEN GARCIA's sentencing, the judge stated that FCI DUBLIN was a "cesspool" during WARDEN GARCIA's tenure at FCI DUBLIN.

## SEXUAL ASSAULTS BY OTHER FCI DUBLIN
## CORRECTIONAL OFFICERS

22.      On March 10, 2022, **ENRIQUE CHAVEZ**, a correctional officer at FCI DUBLIN, was criminally indicted for sexually assaulting a female inmate while acting in the course and scope of his employment in the United States District Court, Northern District of California.

23.      CHAVEZ pled guilty to the charges and was sentenced to 20 months in prison.

24.      On June 25, 2021 **ROSS KLINGER**, a correctional officer at FCI DUBLIN, was criminally charged for sexually assaulting two female inmates while acting in the course and scope of his employment in the United States District Court, Northern District of California. KLINGER pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. section 2243(b).

25.      In early June of 2023 **JOHN RUSSELL BELLHOUSE**, a correctional officer at FCI DUBLIN, was found guilty of five counts of sexual abusing two female inmates between 2019 and 2020 at FCI DUBLIN in the course and scope of his employment in the United States District Court, Northern District of California.

26.      In August of 2022 even the former Dublin **prison chaplain**, **JAMES THEODORE HIGHHOUSE**, was sentenced for coercing female inmates to have sex with him as they sought out his spiritual guidance while he was acting as a correctional officer in the course and scope of his employment at FCI DUBLIN.

27.      Former correctional officer **NICHOLAS THEODORE RAMOS** was placed on administrative leave at FCI DUBLIN in March of 2022 after he was investigated for sexually assaulting female inmates at FCI DUBLIN.  In August of 2022 RAMOS took his own life.

28.      Former correctional officer **SERGIO SAUCEDO** was placed on administrative leave at FCI DUBLIN in March of 2022 after he was investigated for sexually assaulting female inmates at FCI DUBLIN.

29.      In July 2023, former correctional officer **NAKIE NUNLEY** admitted to committing ten felony charges of sexual abuse of female inmates at FCI DUBLIN and lying to

federal investigators.  In the plea agreement, NUNLEY admitted to improper touching and engaging in oral sex and having sexual intercourse.

30.     In July 2023, **ANDREW JONES** ("CO JONES") entered into a plea agreement for sexual abuse and assault committed while acting in the course and scope of his employment. In the plea agreement, CO JONES admitted to engaging in oral and vaginal sex with three female inmates, including Plaintiff.  CO JONES also admitted that he lied to federal investigators about sexually abusing his victims.

31.     Several employees of the BOP that worked at FCI DUBLIN reported sexual assaults by correctional officers.  However, instead of investigating the repeated reports of sexual assaults, employees that reported the sexual assaults were transferred to less desirable geographic locations or forced to resign or retire.

## VIOLATION OF PRISON RAPE ELIMINATION ACT
## ("PREA")

32.     Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. section 30301, et seq. ("PREA") to establish national standards for preventing sexual abuse of federal inmates and responding to sexual abuse of federal inmates.  The United States Department of Justice finalized these mandated standards on or about May 17, 2012.

33.     PREA regulations are mandatory for federal employees of the BOP.  PREA requires the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment outlining [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.  PREA, adopted by DOJ and binding on BOP, require periodic PREA audits of all federal correctional facilities to ensure compliance with the standards put forth in the regulations.

34.     PREA requires that "all staff . . . report immediately" any "knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in the facility," and any "retaliation against inmates or staff who reported such an incident," as well as any "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."  28 C.F.R. section 115.61(a).

35.    It is mandated that when a prison inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate. 28 C.F.R. section 115.62.

36.    Pursuant to PREA requirements, sexual abuse victims shall be offered medical and mental health care by the BOP. 28 C.F.R. section 115.83.

37.    Pursuant to PREA, all employees of the BOP that have contact with inmates must be trained on the following items:  1) Zero-tolerance policy for sexual abuse and sexual harassment; 2) Fulfilling their responsibilities regarding detection, reporting and responding to sexual abuse; 3) An inmates right to be free from sexual abuse and sexual harassment; 4) The right of inmates and employees to be from retaliation for reporting sexual abuse and harassment; 5) The dynamics of sexual abuse and sexual harassment in confinement; 6) The common reactions of sexual abuse and sexual assault victims; 7) How to detect and respond to signs of threatened and actual sexual abuse; 8) How to avoid inappropriate relationships with inmates, and other similar requirements.

38.    Pursuant to PREA, 28 C.F.R. Part 115.76, the presumptive disciplinary sanction for staff that sexually abuse inmates, such as wardens and corrections officers, is termination of employment.

39.    Personnel at FCI DUBLIN failed to follow PREA's requirements and turned a "blind eye" towards the rampant sexual abuse of female inmates at FCI DUBLIN which enabled sexual assaults at FCI DUBLIN to routinely occur.  PREA requirements at FCI DUBLIN were violated from the top down as WARDEN GARCIA led by example that prison rape was acceptable.

40.    Defendant CO SMITH repeatedly sexually assaulted Plaintiff and other female inmates at FCI DUBLIN in violation of PREA.  Other employees at FCI DUBLIN knew about CO SMITH's repeated sexual assaults of female inmates at FCI DUBLIN and failed to report his sexual assaults or take any stops to prevent it.

41.    At FCI DUBLIN, at all relevant times, there was an institutional defiance of PREA regulations adopted by the BOP based on the known culture that existed at the institution.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

42.     Defendant CO SMITH violated PREA, Plaintiff's Constitutional rights and California law on gender violence and sexual assault with regard to his sexual assaults of female inmates at FCI DUBLIN, including Plaintiff.

### DECEMBER 13, 2022 UNITED STATES SENATE
### STAFF REPORT REGARDING SEXUAL ABUSE
### OF FEMALE INMATES IN FEDERAL PRISONS

43.     On or about December 13, 2022 the United States Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Government Affairs, led by Senator Jon Ossoff and Ron Johnson, released a report entitled *Sexual Abuse of Female Inmates in Federal Prisons* ("Senate Report").

44.     The Senate Report is extensive and is over thirty pages in length.  The report states, in relevant part:

a.     Women entering prison are significantly more likely than men to be sexually harassed and abused while incarcerated;

b.     Sexual abuse of prisoners in BOP custody by employees is both a federal crime and subject to BOP administrative sanctions;

c.     BOP 'staff sexual relations with inmates is always illegal' as there is no 'consent' defense to violation of 18 U.S.C. section 2243(b);

d.     The 'inherently unequal' relationship between BOP employees and prisoners precludes prisoners from having 'the same ability as staff members to consent to a sexual relationship;

e.     The Senate Report concluded that over the past ten years (2012 to 2022) there were 5,415 cases of reported inmate sexual abuse (male and female) by BOP employees.  Of those cases, 586 were "substantiated" (meaning determined to have likely occurred by investigation).  Moreover, there were at least **134 cases** for which a **BOP employee was convicted of sexually abusing a female prisoner** or where BOP Office of Inspector General **substantiated allegations** that a **female prisoner** was sexually abused by a BOP employee.

f.  That FCI DUBLIN failed to detect the culture of BOP employees sexually abusing female detainees at those facilities before, during, and after abuse occurred.  The senate subcommittee also found that BOP does not systematically analyze complaint data to detect potentially problematic employees or institutions.  Finally, the BOP has accrued a backlog of approximately 8,000 cases and does not report case closure rates in a way that would indicate its progress in clearing the backlog.

g.  When the Subcommittee asked the BOP Regional Director for the Western Region, Melissa Rios, the BOP official responsible for oversight of FCI DUBLIN among other facilities, how the regional office monitored potential sex abuse in its facilities, she explained that she relies on PREA policies to mitigate the risk of sexual assault, and PREA audits to assess compliance with the PREA policies.

h.  PREA audits noted findings by BOP OIA Chief Reese of "cultural issues" concerning sexual misconduct by employees.  Despite these findings, the PREA audits came back clean for FCI DUBLIN per the BOP, i.e. that all PREA standards before, during, and after the multiple, documented instances of sexual abuse at FCI DUBLIN.  The subcommittee has "concerns" about PREA audits at FCI DUBLIN.  Specifically, the Senate Report notes that the PREA audit of FCI DUBLIN from 2017 identifies known convicted sexual abuser WARDEN GARCIA (discussed hereinabove in detail) as FCI DUBLIN's PREA compliance officer.  In this position, WARDEN GARCIA was responsible for ensuring that the facility was compliant with the PREA standards, training, policies, and coordinating the PREA audit.

i.  The Senate Report notes several deficiencies with regard to the BOP's analysis of PREA complaint data, i.e. complaints of sexual assaults of inmates.

j.   The Senate Report notes that the BOP Office of Internal Affairs Reporting is confusing, omits relevant information and obscures BOP's Internal Affairs case backlog of *approximately 8,000 cases*, which has led to a failure in holding wrongdoers accountable.

k.   BOP failed to take agency-wide action to address sexual abuse of female inmates by male BOP employees. While BOP's and DOJ's recent focus on sexual abuse prevention and deterrence represents progress, it comes years after significant incidents of abuse came to light.

45.   The Senate Report found that there were at least four BOP facilities between 2012 and 2022 with *recurring* sexual abuse of female prisoners by male BOP employees, including FCI DUBLIN.

46.   Significantly, with respect to FCI DUBLIN, the Senate Report noted that within eighteen months prior to the date of the Senate Report there were *five* indictments of BOP employees for sexual abuse of at least eight female detainees at FCI DUBLIN.

47.   Shockingly, the Senate Report noted that as of May 2022, the Office of the Inspector General and/or the BOP were investigating *at least 17 additional current or former employees* at FCI DUBLIN for sexual misconduct.  At least 15 of these 17 additional individuals are not identified in this Complaint.

48.   The Senate Report details that sexual abuse at FCI DUBLIN has been an ongoing problem since the 1990's, as follows, in relevant part:

a.   **In 1996**, three women were brought to a male housing unit at an adjacent facility where BOP officers opened their cell doors **allowing male inmates to rape them**.  In 1998, the BOP promised 'to adopt and implement certain policies and procedures designed to reduce the risk to female prisoners of sexual assaults.

b.   In the **late 1990's and early 2000's**, four BOP employees at FCI DUBLIN were convicted or pleaded guilty to sexual abuse of female inmates at that facility.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

c.  **In the early 2010's**, according to media reports, approximately 'a dozen Dublin employees were removed for sexually abusing inmates," including one who videotaped himself having sex with inmates and stored those tapes in a prison locker.  None were arrested.

## THE PARTIES

### A.  Plaintiff

49.    Plaintiff L.R. is an adult female who was a victim of sexual assault and abuse that occurred while she was an inmate at FCI DUBLIN.

50.    As a victim of sexual assault as defined by section 115.6 of the Prison Rape Elimination Act ("PREA"), the name L.R. is not Plaintiff's actual name. Rather, Plaintiff is using her initials to protect her privacy. Plaintiff is entitled to protect her identity in this public court filing by not disclosing her full name because she was sexually assaulted.  *Sealed Plaintiff v. Sealed Defendant*, (2008) 537 F.3d 185, 187, 189-190.  This litigation involves matters that are "highly sensitive of a personal nature," and based on the nature of the allegations alleged, revealing Plaintiff's true name would pose a risk of retaliatory physical or mental harm to Plaintiff.

### B.  Defendants

51.    Defendant UNITED STATES OF AMERICA is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts of its employees and servants.

52.    Defendant UNITED STATES OF AMERICA is a governmental entity which is comprised of departments and agencies including the FEDERAL BUREAU OF PRISONS ("BOP"). These governmental entities are one in the same and will be hereinafter referred to collectively as the "UNITED STATES."  Defendant UNITED STATES owns, operates, manages, and oversees numerous prisons, including FCI DUBLIN. At all times relevant herein, Plaintiff was committed and confined to FCI DUBLIN, a female-only prison owned and operated by the UNITED STATES and located at or near 5701 8th St., Dublin, CA 94568.

53.    Plaintiff is informed and believes, and on this basis alleges, that at all times

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

relevant herein, Defendant UNITED STATES, acting through its, secretary, supervisory employees, employees, agents and staff, including the BOP, hired CO SMITH and DOES 1 through 10 to serve as "correctional officers" within the meaning and powers of 28 U.S.C. §2680(h) and 18 U.S.C. §3050.  CO SMITH and DOES 1 through 10, and each of them, were employees of Defendant UNITED STATES, at all relevant times, acting within the course and scope of their employment. As such, CO SMITH and DOES 1 through 10 were responsible for the custody, supervision, care, control, direction, safety, and wellbeing of prisoners at FCI DUBLIN.

54.     At all times relevant herein, Defendant CO SMITH is and was a resident of the State of California.

55.     At all times relevant herein, Defendant CO SMITH was a correctional officer at FCI DUBLIN employed and/or acting as the authorized agent of Defendants UNITED STATES, UNITED STATES DEPARTMENT OF JUSTICE ("DOJ"), BOP and DOES 1 through 10.

56.     Defendant CO SMITH was acting under the supervision, training, and management of Defendant UNITED STATES, and DOES 1 through 10 at all relevant times.

57.     The true names, identities, or capacities, whether individual, associate, successor-in-interest to, corporate, or otherwise, of Defendants DOES 1 through 10, are unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names. When the true names, identities, or capacities of such fictitiously designated Defendants are ascertained, Plaintiff will ask leave of this Court to amend this complaint to assert their true names, identities, and capacities, together with the proper charging allegations.

58.     Each of the Defendants designated herein as a DOE is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

59.     Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, each Defendant was the agent, representative, or employee of each other Defendant. In doing the things hereinafter alleged, each Defendant was acting within the course and scope of said alternative personality, capacity, identity, agency, representation, or

employment and were within the scope of their authority, whether actual or apparent. Plaintiff is informed and believes and based thereon alleges that, at all times mentioned herein, Defendants were the trustees, partners, servants, joint venturers, shareholders, contractors, or employees of each other Defendant and the acts and omissions herein alleged were done by them, acting individually through such capacity, within the scope of their authority, with the permission and consent of each other Defendant, and whose conduct was thereafter ratified by each other Defendant. Accordingly, each of them is jointly and severally liable to Plaintiff.

/ / /

## JURISDICTION AND VENUE

60.    Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the Federal Tort Claims Act ("FTCA").  Additionally, the court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) pursuant to 28 U.S.C. section 1331.  The court has supplemental jurisdiction over Plaintiff's California statutory and common law claims pursuant to 28 U.S.C. section 1367 because these state law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

61.    The court also has personal jurisdiction over Defendants.  The court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California.  The court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

62.    Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. section 1391(b)(2) and 28 U.S.C. section 1402(b).  All incidents giving rise to this litigation occurred in the Northern District, at FCI DUBLIN, located at 5701 8th Street, Dublin, CA 94568.

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE EIGHTH AMENDMENT**

**CRUEL AND UNUSUAL PUNISHMENT**

**AKA BIVENS**

**(Against Defendant DARRELL WAYNE SMITH and DOES 1 through 10)**

63.  Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

64.  Plaintiff had the right to be free from infliction of cruel and unusual punishment under the Eighth Amendment of the Constitution of the United States.

65.  Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff has a constitutionally protected right to be free of cruel and unusual punishment. Sexual abuse of a prisoner is a violation of the Eighth Amendment of the Constitution.

66.  As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact, harassment and abuse by a correctional officer.  Plaintiff L.R. did not consent to any of the sexual contact and sexual assaults initiated by Defendant CO SMITH, all of which was unwelcome.

67.  CO SMITH knew his conduct was prohibited as he received PREA training and other training stating that no employee of the BOP could engage in any type of sexual conduct with an inmate because it was illegal.  However, he knew that FCI DUBLIN's culture, starting with WARDEN GARCIA all the way down was to turn a blind eye towards sexual harassment and sexual assault of female inmates.  CO SMITH knew that the PREA training and other training he was provided would not be enforced.  He also knew that there would be no consequences for sexual harassment or sexual assault of female inmates as the warden was engaging in such behavior.

68.  Plaintiff L.R. was informed and believes that CO SMITH was advised, as part of his training, that he could not maintain inappropriate relationships with prisoners, which included becoming emotionally, sexually, romantically, or financially involved with prisoners or former prisoners.

69.    At all relevant times, Defendants CO SMITH and DOES 1 through 10 were acting under color of federal law and color of authority, using their position of power as a Correctional Officer with Defendant UNITED STATES to intimidate, coerce, threaten, harass and sexually assault Plaintiff.

70.    Defendant's repeated sexual assaults of Plaintiff, and other uses of force, committed while acting as a Correctional Officer with Defendant UNITED STATES, deprived Plaintiff of her Constitutional right to be secure in her person and free of interference with her bodily integrity as guaranteed by the Eighth Amendment of the United States Constitution.

71.    It is a broadly recognized and long-standing principle that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison* (1803) 1 Cranch 137, 163.  Plaintiff may recover money damages for injuries suffered as a result of the violation of the Eighth Amendment.  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* (1999) 403 U.S. 388, 397.  "A sexual assault on an inmate by a guard - regardless of the gender of the guard or of the prisoner - is deeply "offensive to human dignity." "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society." *Schwenk v. Hartford* (2000) 204 F.3d 1187, 1197.

72.    Defendants CO SMITH and DOES 1 through 10 detained Plaintiff without reasonable suspicion by using the color of law and his position of power as a law enforcement officer.

73.    Defendants CO SMITH and DOES 1 through 10, while at FCI DUBLIN harassed, intimidated, and sexually assaulted Plaintiff under color of law while wearing their official BOP uniforms, using the authority vested in them by the BOP and the UNITED STATES for the purpose of intentionally sexually assaulting Plaintiff.  As a result, CO SMITH and DOES 1 through 10 violated Plaintiff's right to be free from cruel and unusual punishment guaranteed to all persons in the United States under the Eighth Amendment of the United States Constitution.

74.    The conduct of Defendants CO SMITH and DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and

1  therefore warrants the imposition of exemplary and punitive damages against Defendant CO

2  SMITH and DOES 1 through 10.

3       75.    Plaintiff lacks a statutory cause of action that provides a meaningful remedy.

4       76.    As a direct and legal result of the aforementioned acts and omissions of

5  Defendants CO SMITH and DOES 1 through 10, Plaintiff has suffered great physical pain,

6  mental pain and suffering, emotional distress, and past and future costs of medical care and

7  treatment, and other economic and non-economic damages in an amount not yet ascertained.

8       77.    The actions, conduct and omissions of Defendant CO SMITH violated the rights

9  of Plaintiff L.R. under the Eighth Amendment to the United States Constitution.

10  **SECOND CLAIM FOR RELIEF**

11  **GENDER VIOLENCE**

12  **VIOLATION OF CIVIL CODE SECTION 52.4**

13  **(California Civil Code section 52.4)**

14  **(Against Defendant DARRELL WAYNE SMITH and DOES 1 through 10)**

15       78.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

16  contained above and below as though fully set forth and brought in this cause of action.

17       79.    Plaintiff brings this claim for gender violence pursuant to California Civil Code

18  section 52.4 against CO SMITH in his individual capacity.

19       80.    Pursuant to California statute, any person subjected to gender violence may bring

20  a civil action for damages against the responsible party. Gender violence is a form of sex

21  discrimination that includes a physical intrusion or invasion of a sexual nature under coercive

22  conditions.

23       81.    CO SMITH discriminated against Plaintiff based on her gender as a female when

24  he repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive

25  conditions that were present between them.

26       82.    CO SMITH's actions of sexual assault and sexual harassment could not have been

27  discretionary as he knew such conduct was prohibited by PREA training, BOP policies, the

28  general law in the United States and California prohibits sexual assault, and common sense.

83.     CO SMITH intentionally sexually assaulted Plaintiff and other inmates on numerous occasions.  Thus, CO SMITH acted with malice and oppression and his conduct constitutes a reckless disregard of Plaintiff's rights, entitling her to punitive damages.

84.     Plaintiff seeks compensatory damages, punitive damages, reasonable attorneys' fees, and costs against CO SMITH.

### THIRD CLAIM FOR RELIEF

### SEXUAL ASSAULT AND BATTERY

### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1708.5

**(Against Defendant DARRELL WAYNE SMITH and DOES 1 through 10)**

85.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim for sexual assault under California Civil Code section 1708.5 against CO SMITH in his individual capacity.

87.     CO SMITH acted with the intent to cause a harmful and offensive contact with an intimate part of Plaintiff, and a sexually offensive contact with Plaintiff directly and indirectly resulted on numerous occasions by engaging in the following acts against Plaintiff:

        (a)     CO SMITH touched and fondled Plaintiff's breasts and vagina in her cell.

88.     CO SMITH also acted with the intent to cause a harmful and offensive contact with Plaintiff by use of his own intimate part on Plaintiff's body, and a sexually offensive contact with Plaintiff directly and indirectly occurred.

89.     CO SMITH also acted to cause an imminent apprehension of sexual assault and a sexually offensive contact with Plaintiff directly and indirectly resulted.

90.     A person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages.

91.     The offensive contact by CO SMITH would offend a reasonable sense of personal dignity.

92.     CO SMITH's actions also violated PREA regulations and BOP policy prohibiting sexual assault and abuse.  Thus, CO SMITH could not have been making a policy judgment in his role as a correctional officer.

93.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

94.     In committing the acts described herein, the conduct of defendant CO SMITH and DOES 1-10 was despicable, done with malice, oppression and fraud, justifying an award of punitive damages against him.

## FOURTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendant DARRELL WAYNE SMITH and DOES 1 through 10)**

95.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     The conduct of Defendant SMTIH and Does 1 through 10 was outrageous and despicable and was calculated to cause great harm to Plaintiff, who was an inmate at FCI DUBLIN while CO SMITH was supervising and overseeing Plaintiff while she was in custody. CO SMITH had the ultimate power and authority over Plaintiff while acting as a correctional officer overseeing Plaintiff, an inmate at FCI DUBLIN.  CO SMITH used his position of authority to sexually assault Plaintiff knowing that Plaintiff had no ability to refuse his sexual assaults and abuse.  CO SMITH could take actions against Plaintiff to ensure that her sentence was extended or she was disciplined.  CO SMITH abused his power and authority for the purpose of sexually assaulting Plaintiff.  This conduct cannot be tolerated by the citizens of the United States.  Inmates at federal correctional facilities cannot be subject to sexual assaults and abuse as part of their sentence.

97.     None of the actions by CO SMITH set forth herein were within his discretion in his job as a correctional officer.

98.     CO SMITH's intended to cause or acted with a reckless disregard of the probability that Plaintiff would suffer emotional distress.  Plaintiff has suffered extreme and severe emotional distress as a direct result of CO SMITH's sexual assault and sexual abuse of Plaintiff while she was an inmate at FCI DUBLIN.

99.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

100.    In committing the acts described herein, the conduct of Defendant CO SMITH and DOES 1-10 was despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against Defendant CO SMITH and DOES 1through 10.

## COMPLIANCE WITH FEDERAL TORT CLAIMS ACT

101.    Pursuant to the Federal Tort Claims Act a written claim was issued to the BOP on or about November 14, 2022.

102.    28 U.S.C. §2675(a) provides that failure of a federal agency to make a final disposition on a claim may be deemed a final denial for purposes of filing a complaint.

103.    The requisite time for the federal agencies to respond to the demand pursuant to the Federal Tort Claims Act has expired, and Plaintiff is entitled to bring her claim in this Court within six months of the expiration for the time to respond.

104.    A true and correct copy of Plaintiff's FTCA claim is attached hereto as Exhibit 1.

105.    A true and correct copy of the BOP's acknowledgment is attached hereto as Exhibit 2.

106.    The BOP has neither accepted nor rejected Plaintiff's administrative claim and six months has lapsed since Plaintiff has submitted her administrative claim.  Pursuant to 28 U.S.C. section 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

**SOVEREIGN IMMUNITY WAIVER**

107.    Under the FTCA, Defendant UNITED STATES has waived its sovereign immunity "… for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred…" 28 U.S.C. §2672.

108.    "'The 'law enforcement proviso' to the intentional tort exception 'extends the waiver of sovereign immunity to claims for six intentional torts ... that are based on the 'acts or omissions of investigative or law enforcement officers.'" . . . . In short, if the 'law enforcement proviso' applies, sovereign immunity is waived." *Dickson v. United States* (5th Cir. 2021) 11 F.4th 308, 313–314.

109.    Plaintiff was sexually assaulted by CO SMITH and DOES 1 through 10, acting under color of authority as "law enforcement officers," who were supervising, overseeing, monitoring (e.g., video surveillance), controlling, directing, restraining, imprisoning, and ordering Plaintiff at FCI DUBLIN within the course and scope of their employment with Defendant UNITED STATES and BOP.

110.    Plaintiff's injuries are a direct consequence of Defendant UNITED STATES negligence in (a) "failing to enforce zero tolerance policy" [28 CFR §115.11]; (b) "failing to supervise and monitor (e.g., video surveillance) one-on-one inmate/officer contact" [28 CFR §115.13]; (c) "permitting improper cross-gender pat downs" 2[8 CFR §115.15]; (d) "hiring, promoting and retaining officers who "may" have had improper sexual contact" [28 CFR §115.17]; (e) "punishing sex victims with involuntary segregated housing, loss of privileges and work permits" [28 CFR §115.43]; (f) "failing to report suspicion of sexual abuse" [28 CFR §115.61]; (g) "failing to protect inmates from retaliation after reporting abuse" [28 CFR §115.67]; and (h) "failing to discipline staff for sexual misconduct" [28 CFR §115.76].

111.    Plaintiff's injuries are also a consequence of intentional torts (e.g., assault, battery, gender violence, sexual harassment, intentional infliction of emotional distress)

perpetrated by Defendants CO SMITH and DOES 1 through 10. Although specific intentional torts are excluded from the sovereign immunity waiver provisions of the FTCA, the "law enforcement proviso" provides that: "with regard to acts or omissions of <u>investigative or law enforcement officers</u> of the United States Government, the provisions of this chapter and <u>section 1346(b) of this title</u> shall apply to any claim arising. . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. 2680(h).

112.    Pursuant to 28 U.S.C. §2674, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances…" Moreover, "…the Federal Tort Claims Act (FTCA or Act), 28 U.S.C. §§1346(b), 2671-2680… waives the Government's sovereign immunity from tort suits, including those based on certain intentional torts committed by federal law enforcement officers, §2680(h)." *Millbrook v. U.S.* (2013) 133 S. Ct. 1441, 1443.

113.    "Government officials do not have relevant discretion when "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.' " *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267. . . (1991) (*quoting Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954. . . (1988) ). 'In other words, the discretionary function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy.'" [Citations omitted.]  *Campos v. United States* (5th Cir. 2018) 888 F.3d 724, 731.

114.    "The Senate Committee report states that the [law enforcement] proviso was added to the FTCA in response to 'abusive, illegal, and unconstitutional 'no-knock' raids' engaged in by federal narcotics agents in the Collinsville raids and in Bivens.  12 S.Rep. 93–588, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 2789, 2790. After observing that there was 'no effective legal remedy against the Federal Government' for the intentional torts of its agents, the Committee went on to state that the law enforcement proviso should be viewed as a counterpart to the Bivens case and its progeny, in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages

for the same type of conduct that is alleged to have occurred in Bivens. *Id*. at 2791 (emphasis added). The report continues that the proviso would submit the Government to liability whenever its agents act under color of law so as to injure the public through searches and seizures that are conducted without warrants or with warrants issued without probable cause. However, [the proviso] should not be viewed as limited to constitutional tort situations but would apply in any case in which a Federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law.  *Id.* (emphasis added).  The language of the Senate Report—which reflects an awareness of the outrageous conduct by federal law enforcement officers and the indignities to which law abiding citizens had been subjected—is categorical and unqualified. ***The government is to be liable whenever its agents commit constitutional torts and in any case in which a Federal agent commits acts which under accepted tort principles constitute one of the intentional torts enumerated in the proviso***. *Sutton v. U.S.* (5th Cir. 1987) 819 F.2d 1289, 1295–1296.  [Emphasis added.]

115.     At all relevant times, CO SMITH and DOES 1 through 10 were acting within the course and scope of their employment with Defendant UNITED STATES as "law enforcement officers" within the meaning of 28 U.S.C. 2680(h). At all relevant times, each individual defendant was acting under color of authority as a "law enforcement officer," and was supervising, overseeing, monitoring, controlling, directing, restraining, imprisoning, and ordering Plaintiff at FCI DUBLIN within the course and scope of their employment with Defendant UNITED STATES. During the sexual assaults alleged herein by Plaintiff as committed by CO SMITH and DOES 1 through 10, CO SMITH and each DOE defendant, at all relevant times, was using his authority as a "law enforcement officer" to force, physically force, direct, intimidate, order, and coerce Plaintiff to submit to sexual assaults and to refrain from revealing or disclosing the sexual assaults and abuse perpetrated on her by "law enforcement officers" for fear of reprisal, longer sentences, inability to leave the facility, fear of further physical and sexual assaults, fear of being charged with additional crimes, fear of living in a perpetual state of violence and assaults, fear of being committed to the prison system for an increased period of time, fear of not being believed as an inmate in a Federal prison, a pattern

and practice of "law enforcement officers" using their status to silence victims of sexual assault, a pattern and practice of supervisory officers "turning a blind eye" to the sexual assaults and abuse. These "law enforcement officers" used and abused their authority granted to them as "law enforcement officers" within the course and scope of their employment to sexually assault Plaintiff and keep her silent. As a result of the individual defendants' use and abuse of their positions of authority as a "law enforcement officer" within the course and scope of their employment, Defendant UNITED STATES is vicariously liable for the sexual assaults of Plaintiff.

116.   At all times mentioned herein, Defendant CO SMITH and DOES 1 through 10, and each of them, were acting under color of the laws, statutes, ordinances, regulations, customs, and usages of the UNITED STATES, pursuant to their official authority and their policies, procedures, practices, and/or customs established by directives and/or other acts of Defendant UNITED STATES, its agencies and departments.

117.   28 U.S.C. section 2680(h) specifically allows claims against "law enforcement officers," including correctional officers, to proceed against the United States for **assault** and **battery** committed by a law enforcement officer acting within the course and scope of his employment with the United States.

118.   "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C.A. § 2674.

119.   In the present case, CO SMITH and DOES 1 through 10 were, at all relevant times, acting within the course and scope of their authority as law enforcement officers, using the color of their authority to sexually assault and batter Plaintiff.  Pursuant to the Federal Tort Claims Act and 28 U.S.C. section 2680(h), sexual assault and battery committed by a law enforcement officer while acting in the course and scope of his employment, while using the color of his authority, is not a discretionary function that would be subject to qualified immunity.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM FOR RELIEF

**SEXUAL ASSAULT AND BATTERY BY LAW ENFORCEMENT OFFICER**

**ACTING WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT**

**WITH THE UNITED STATES**

**(CALIFORNIA CIVIL CODE § 1708.5**

**28 U.S.C. section 2680(h)**

**FEDERAL TORT CLAIMS ACT)**

(Against Defendant UNITED STATES)

120.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

121.    Pursuant 28 U.S.C. §1346(b), Defendant UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred."

122.    The United States stands in the shoes of its employees whose "negligent or wrongful act[s]" in the scope and course of their federal employment cause an injury. 28 U.S.C. § 2679(b)(1).

123.    Defendants CO SMITH and DOES 1 through 10, in committing the acts herein alleged, intended to subject Plaintiff to sexual abuse, assault, and molestation while Plaintiff was confined as an inmate at FCI DUBLIN while CO SMITH and DOES 1 through 10 acted in the course and scope of their employment with Defendant UNITED STATES as correctional officers.

124.    At all relevant times, CO SMITH and DOES 1 through 10, were wearing their official uniforms issued by the BOP, using their color of authority as BOP prison guards at FCI DUBLIN to sexually assault and batter Plaintiff, acting within the course and scope of their employment.

125.   CO SMITH acted with the intent to cause a harmful and offensive contact with an intimate part of Plaintiff, and a sexually offensive contact with Plaintiff directly and indirectly resulted on numerous occasions by engaging in the following acts against Plaintiff:

(a)   CO SMITH touched and fondled Plaintiff's breasts and vagina in her cell.

126.   CO SMITH also acted with the intent to cause a harmful and offensive contact with Plaintiff by use of his own intimate part on Plaintiff's body, and a sexually offensive contact with Plaintiff directly and indirectly occurred.

127.   CO SMITH also acted to cause an imminent apprehension of sexual assault and a sexually offensive contact with Plaintiff directly and indirectly resulted.

128.   Plaintiff did not and cannot consent to CO SMITH and DOES 1 through 10's intended harmful and offensive contact with Plaintiff's person, or to CO SMITH and DOES 1 through 10's intent to place Plaintiff in imminent apprehension of such contact because she was an inmate at FCI DUBLIN at all relevant times.

129.   A person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages.

130.   The offensive contact by CO SMITH would offend a reasonable sense of personal dignity.

131.   CO SMITH's actions also violated PREA regulations and BOP policy prohibiting sexual assault and abuse.  Thus, CO SMITH could not have been making a policy judgment in his role as a correctional officer.

132.   Defendants CO SMITH and DOES 1 through 10's complete control over Plaintiff, and CO SMITH and DOES 1 through 10's use color of authority as "law enforcement officers" within the course and scope of their employment with the UNITED STATES, Plaintiff's physical confinement and detention, Plaintiff's vulnerability, and Plaintiff's mental and emotional state, Plaintiff could not and did not give consent to such acts. Defendants UNITED STATES is vicariously liable for the intentional sexual assaults committed by CO SMITH and DOES 1 through 10 as they were acting within the course and scope of their employment as "law

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

enforcement officers" at the time of the sexual assaults. Defendant UNITED STATES "stands in the shoes of its employees."

133.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SIXTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendant UNITED STATES)

134.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

135.    Defendant UNITED STATES is vicariously liable for the intentional conduct committed by Defendants CO SMITH and DOES 1 through 10 as they were acting within the course and scope of their employment as "law enforcement officers" at the time of the sexual assaults.  At all relevant times, CO SMITH and DOES 1 through 10, were wearing their official uniforms issued by the BOP, using their color of authority as BOP correctional officers at FCI DUBLIN to sexually assault and batter Plaintiff.

136.    The conduct of Defendant SMTIH and Does 1 through 10 was outrageous and despicable and was calculated to cause great harm to Plaintiff, who was an inmate at FCI DUBLIN while CO SMITH was supervising and overseeing Plaintiff while she was in custody. CO SMITH had the ultimate power and authority over Plaintiff while acting as a correctional officer overseeing Plaintiff, an inmate at FCI DUBLIN.  CO SMITH used his position of authority to sexually assault Plaintiff knowing that Plaintiff had no ability to refuse his sexual assaults and abuse.  CO SMITH could take actions against Plaintiff to ensure that her sentence was extended, or she was disciplined.  CO SMITH abused his power and authority for the purpose of sexually assaulting Plaintiff.  This conduct cannot be tolerated by the citizens of the

United States. Inmates at federal correctional facilities cannot be subject to sexual assaults and abuse as part of their sentence.

137. None of the actions by CO SMITH set forth herein were within his discretion in his job duties as a correctional officer.

138. CO SMITH's intended to cause or acted with a reckless disregard of the probability that Plaintiff would suffer emotional distress. Plaintiff has suffered extreme and severe emotional distress as a direct result of CO SMITH's sexual assault and sexual abuse of Plaintiff while she was an inmate at FCI DUBLIN.

139. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

140. Defendants CO SMITH's and DOES 1 through 10's sexual assaults, battery, molestation, and harassment of Plaintiff while Plaintiff was under the control and direction of Defendants is deeply offensive to human dignity. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan* (1994) 511 U.S. 825, 834.

141. Defendant UNITED STATES is vicariously liable for the intentional sexual assaults of the Plaintiff as Defendants CO SMITH and DOES 1 through 10 were acting within the course and scope of their employment at all relevant times based on their positions as "law enforcement officers."

142. Defendants CO SMITH and DOES 1 through 10's conduct described herein was intentional and malicious and done for the purpose of causing, or with substantial certainty that such conduct would cause, Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

143.    26 U.S.C. § 2680(h) does not preclude suits under the FTCA for Intentional Infliction of Emotional Distress. *See Kohn v. United States*, 680 F.2d 922, 926 (2d Cir. 1982); *Sheehan v. United States* (1990) 896 F.2d 1168.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF MANDATORY DIRECTIVE IN A FEDERAL STATUTE REGULATION OR POLICY

### CONDONING IMPROPER CROSS-GENDER PAT DOWNS

### [28 CFR §115.15]

(Against Defendant UNITED STATES)

144.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

145.    Defendants UNITED STATES and DOES 1 through 10 owed Plaintiff a duty to take reasonable protective measures to protect Plaintiff and other female inmates from the risk of improper cross-gender pat downs by Defendants CO SMITH and DOES 1 through 10 by not implementing adequate policies to prohibit improper cross-gender pat downs of Plaintiff and others by Defendants CO SMITH and DOES 1 through 10.

146.    Pursuant to 28 CFR section 115.15, "The facility shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances."

147.    Pursuant to 28 CFR section 115.15, "The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit."

148.    Pursuant to 28 CFR section 115.15, "The agency shall train security staff in how to conduct cross-gender pat-down searches. . . in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs."

149.     CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN engaged in the following conduct, in violation of 28 CFR section 115.15:

    a.  Engaging in patterns and practices and conduct such that cross-gender strip searches were routine for the purpose of sexually assaulting female inmates under color of authority, while acting in the course and scope of their employment as law enforcement officers with the BOP/United States, without exigent circumstances.

    b.  Intentionally ignoring and violating policies and procedures mandating that female inmates be allowed to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks.  Rather than actually dictate that such policies and procedures were followed, employees of the BOP/United States acting in the course and scope of their employment intentionally violated such policies and turned a blind eye to such violations contrary to the mandatory provisions of 28 CFR section 115.15.

    c.  Rather than train security staff in how to conduct cross-gender pat-down searches. . . in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs, the employees of the BOP/United States trained correctional officers regarding how to use cross-gender pat-downs to sexually assault female inmates under the guise of an exigent search.

150.     Defendants UNITED STATES and DOES 1 through 10 breached their duty to avoid improper cross-gender pat downs to protect Plaintiff and other female prisoners in custody from the risk of sexual abuse, molestation, and harassment by Defendants CO SMITH, DOES 1 through 10, other correctional officers, assistant wardens and wardens such that Plaintiff was sexually assaulted and battered by Defendants CO SMITH and DOES 1 through 10.

158. As a direct and proximate result of the conduct of defendants' correctional officers, including CO SMITH and DOES 1 through 10, Plaintiff was sexually assaulted and battered by CO SMITH and suffered severe emotional distress, physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, other physical and emotional injuries, economic and noneconomic damages.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF MANDATORY DIRECTIVE IN A FEDERAL STATUTE REGULATION OR POLICY

### FAILURE TO DISCIPLINE STAFF FOR SEXUAL ABUSE

### [28 CFR §115.76]

(Against Defendant UNITED STATES)

151.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

152.    Pursuant to 28 CFR 115.76, "[s]taff shall be subject to disciplinary or adverse action up to and including removal from their position and the Federal service for substantiated allegations of sexual abuse or for violating agency or facility sexual abuse policies."

153.    Pursuant to 28 CFR 115.76, "[r]emoval from their position and from the Federal service is the **presumptive disciplinary sanction** for staff who have engaged in or attempted or threatened to engage in sexual abuse."

154.    CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment with BOP/United States engaged in the following conduct, in violation of 28 CFR 115.76:

      a.   Turning a blind eye towards sexual abuse of female inmates, conspiring with each other to ignore sexual abuse of female inmates committed by others, fostering a culture of sexual assaults and abuse of female inmates, engaging in retaliatory conduct towards employees and inmates that report inmate sexual abuse, engaging in a culture of sexual assaults and abuse, using pat-down

searches, cell inspections and other types of searches under the guise of pat-down searches for purposes of sexual assault and abuse of female inmates, creating a culture of consent to sexually abuse female inmates and taking action to further the culture of sexual abuse of female inmates, including sexually assaulting female inmates.

b.  Creating a culture of silence with regarding to reporting sexual abuse of inmates.

c.  Taking no disciplinary action towards correctional officers, third party vendors, assistant wardens and wardens for sexually assaulting female inmates in direct violation of CFR 115.76.

d.  Advising employees of the BOP/United States that there is no punishment for sexually assaulting female inmates, both implicitly and explicitly.

155.    As a direct result of the intentional misconduct of the employees of the BOP/United States, Plaintiff was sexually assaulted by CO SMITH and DOES 1 through 10, while acting under color of law, while wearing a uniform at FCI DUBLIN and overseeing Plaintiff while in custody as an inmate at FCI DUBLIN.  CO SMITH and DOES 1 through 10 knew that they would not be subject to disciplinary action for sexually assaulting, battering and harassing Plaintiff, thus CO SMITH sexually assaulted Plaintiff in the open at FCI DUBLIN on numerous occasions knowing that if he were observed by the assistant warden, warden, supervisory employees and correctional officers that no disciplinary action would be taken against him

156.    As a direct and proximate result of the conduct of defendants' correctional officers, including CO SMITH and DOES 1 through 10, Plaintiff was sexually assaulted and battered by CO SMITH and suffered severe emotional distress, physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, other physical and emotional injuries, economic and noneconomic damages.

/ / /

/ / /

1

2
## NINTH CLAIM FOR RELIEF

3
**VIOLATION OF MANDATORY DIRECTIVE IN A FEDERAL STATUTE**

4
**REGULATION OR POLICY**

5
**HIRING, PROMOTING AND RETAINING OFFICERS WHO HAVE ENGAGED IN**

6
**IMPROPER SEXUAL CONTACT WITH INMATES**

7
**[28 CFR §115.17]**

8
(Against Defendant UNITED STATES)

9
152.  Plaintiff re-alleges and incorporates by reference herein each and every allegation

10
contained above and below as though fully set forth and brought in this cause of action.

11
153. Pursuant to 28 CFR section 115.17, the BOP shall not hire or promote anyone who

12
may have contact with inmates, and shall not enlist the services of any contractor

13
who may have contact with inmates, who—

14
(1) Has engaged in sexual abuse in a prison, jail, lockup, community confinement

15
facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997);

16
(2) Has been convicted of engaging or attempting to engage in sexual activity in

17
the community facilitated by force, overt or implied threats of force, or coercion,

18
or if the victim did not consent or was unable to consent or refuse; or

19
(3) Has been civilly or administratively adjudicated to have engaged in the

20
activity described in paragraph (a)(2) of this section.

21
154.    CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees

22
and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment

23
with BOP/United States engaged in the following conduct, in violation of 28 CFR 115.17,

24
including but not limited to, hiring and promoting correctional officers and third-party

25
contractors who are known sexual abusers in a prison.  Moreover, such direct violation of 28

26
CFR 115.17 contributed to a culture of permission to sexually abuse female inmates.  Failure to

27
enforce 28 CFR 115.17 was a direct and proximate cause of CO SMITH and DOES 1 through

28
10's sexual assaults and sexual battery of Plaintiff and other female inmates.

154.    CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment with BOP/United States, knew that Defendants CO SMITH had sexually assaulted numerous female inmates before and during his sexual assaults of Plaintiffs.  However, CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment, hired and/or promoted CO SMITH and DOES 1 through 10 in violation of 28 CFR 115.17.

155.    CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment with BOP/United States, while acting under color of authority, breached their duties to Plaintiff and other inmates to protect them from sexual predators like CO SMITH and DOES 1 through 10.

156.    As a direct and proximate result of violation of 28 CFR 115.17, CO SMITH, WARDEN GARCIA, assistant wardens, wardens, supervisory employees and the correctional officers at FCI DUBLIN, acting in the course and scope of their employment with BOP/United States, Plaintiff was sexually assaulted by defendants CO SMITH and DOES 1 through 10.  As a result of CO SMITH and DOES 1 through 10's sexual assaults and battery of Plaintiff while acting within the course and scope of their employment as a BOP/United States correctional officer, Plaintiff suffered general and special damages according to proof, including severe personal physical injuries, including emotional distress.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF MANDATORY DIRECTIVE IN A FEDERAL STATUTE

### REGULATION OR POLICY

### FAILING TO REPORT SEXUAL ABUSE OF INMATES

### [28 CFR §115.61]

(Against Defendant UNITED STATES)

173. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

174.    Pursuant to 28 CFR section 115.61 requires all federal prison staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

175.    Rather than requiring compliance with 28 CFR section 115.61, the supervising BOP employees, including the assistant wardens and wardens, created a culture and practice at FCI DUBLIN, at all relevant times, to encourage correctional officers, staff and other BOP employees to remain silent and not report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred at FCI DUBLIN.

176.    Rather than requiring compliance with 28 CFR section 115.61, the supervising BOP employees, including the assistant wardens and wardens, created a culture and practice at FCI DUBLIN, at all relevant times, to encourage correctional officers, staff and other BOP employees to remain silent and not report retaliation against inmates or staff who reported such an incident.  For example, employees that reported sexual abuse of inmates were routinely transferred to less desirable federal correctional institutions as an example to other staff to keep silent and quiet about knowledge and suspicion about incidents of sexual abuse and sexual harassment of female inmates at FCI DUBLIN.

177.    As a result of the intentional violation of 28 CFR section 115.61, female inmates were sexually abused, and were continually sexually abused and sexually assaulted and battered given that staff were intimidated by supervisory employees and other correctional officers to keep silent about what they heard, saw, knew and suspected about female inmate sexual assaults and sexual battery at FCI DUBLIN at all relevant times.

178.    As a direct result of the intentional violations of 28 CFR 115.61, Plaintiff and other female inmates were sexually assaulted, and even after such sexual assaults were known, they went unreported and continued because of the implicit and express retaliation towards staff by the sexually abusive supervisors and correctional officers at FCI DUBLIN.

179.  As a direct and proximate result of the intentional violations of 28 CFR 115.61 described herein, Plaintiff was sexually assaulted by CO SMITH and DOES 1 through 10, and such sexual assaults continued for a longer period of time and went unreported because of the culture of silence and retaliation for reporting sexual assaults of female inmates at FCI DUBLIN.

180.    As a direct and proximate cause of CO SMITH's and DOES 1 through 10's sexual assaults of Plaintiff, Plaintiff suffered economic and non-economic damages according to proof.

## ELEVENTH CLAIM FOR RELIEF
### VIOLATION OF MANDATORY DIRECTIVE IN A FEDERAL STATUTE
### REGULATION OR POLICY
### FAILING TO PROTECT INMATES AND STAFF
### FROM RETALIATION AFTER REPORTING SEXUAL ABUSE OF INMATES
### [28 CFR §115.67]

(Against Defendant UNITED STATES)

178. Plaintiff re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

179. Pursuant to 28 CFR section 115.67, the BOP shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation.

180.    Pursuant to 28 CFR section 115.67, the BOP shall employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.

181.    Rather than follow such mandatory regulations at FCI DUBLIN, the assistant warden, warden and supervisory employees of the BOP/United States ridiculed and retaliated against inmates and staff who reported sexual assaults, sexual battery and sexual harassment of

inmates by correctional officers, assistant wardens and wardens.  Moreover, the assistant warden, warden and supervisory employees of the BOP/United States failed to transfer the abusers and failed to separate the abusers from the victims of the sexual assaults and abuse.

182.    As a direct and proximate result of the violation of 28 CFR section 115.67, CO SMITH and DOES 1 through 10 knew they would not be subject to discipline for sexually assaulting female inmates and that no steps would be taken to protect inmates and staff that reported sexual assaults.  Thus, the result of the failure to enforce 28 CFR section 115.76 was that CO SMITH and DOES 1 through 10 knew they could sexually assault Plaintiff with impugnity, without any repercussions against them for abusing Plaintiff and others.

183.    At all relevant times, the assistant wardens, correctional officers, staff and other supervisory employees were acting within the course and scope of their employment under color of authority, while in uniform, when they intentionally violated 28 CFR section 115.76 on numerous occasions.

184.    As a direct and proximate result of the violation of 28 CFR 115.67, Plaintiff and other female inmates were abused, and continually abused on numerous occasions.

185.    As a result of such sexual assaults and sexual battery of Plaintiff by CO SMITH and DOES 1 through 10, Plaintiff suffered economic and non-economic damages, according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  For past, present, and future general damages in an amount to be determined at trial.

2.  For special damages, including past and future hospital, medical, professional, and incidental expenses in excess of the jurisdictional minimum of this Court according to proof;

3.  For costs of suit;

1    4.  For exemplary damages against Defendants DARRELL WAYNE SMITH and DOES

2    1 through 10 only;

3    5.  For such other and further relief as the Court may deem proper.

4    Date:   August 24, 2023                    SLATER SLATER SCHULMAN LLP

5

6                                              By:_____

7                                               James W. Lewis

8                                               J. Kyle Gaines
                                                Attorneys for Plaintiff  L.R.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Plaintiff L.R. hereby demands that this action be determined by trial by jury.

Date: August 24, 2023                    SLATER SLATER SCHULMAN LLP

By:_____

  J. KYLE GAINES
  Attorneys for Plaintiff,
  L.R.

COMPLAINT FOR DAMAGES